IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:23cr113-MHT |
| | ) | (WO) |
| RODDRECIUS LAVELLE | ) | |
| GOLDSMITH | | |

OPINION AND ORDER

This criminal cause is before the court on whether defendant Roddrecius Lavelle Goldsmith has the mental capacity to stand trial--that is, whether he is "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a).

Based on the evidence in the record and the testimony presented at a competency hearing on August 30, 2023, the court concludes by a preponderance of the evidence that Goldsmith is not currently mentally competent. The court will therefore commit him to the custody of the Attorney General for a reasonable period of time, not to exceed

four months, for a determination of whether he will attain competency within the foreseeable future. *See* 18 U.S.C. § 4241(d)(1).

## A. Competency Determination

Goldsmith is charged with one count of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a)(1) and a second count of discharging a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Defense counsel moved for a competency hearing after obtaining an evaluation for Goldsmith, which concluded that he is not competent to stand trial due to cognitive deficits. Defendant's Motion for Competency Hearing (Doc. 21) at 1-2.

Courts apply a two-part test to determine competency. *See Bundy v. Dugger*, 850 F.2d 1402, 1408 (11th Cir. 1988). First, the court determines whether "the defendant suffer[s] from a clinically recognized disorder[ ]." *Id.* If the defendant does, then the court determines whether

"that disorder render[s] the defendant incompetent." *Id.* For a defendant to be considered competent to stand trial, he must have both the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

Goldsmith was evaluated by Dr. Holly Kaufman, who also testified at the August 30 hearing. Based on her review of Goldsmith's educational and medical records, and her own administration of a suite of IQ and other tests, Dr. Kaufman found that Goldsmith would not "be able to respond relevantly to questions, listen to and comment on witness testimony, or testify relevantly on his own behalf." Competency Evaluation (Doc. 27) at 16.

According to Dr. Kaufman, Goldsmith experiences psychiatric symptoms and cognitive impairments. Goldsmith has a well-documented history of schizophrenia, and he has been hospitalized on several occasions due to

"mental health concerns." *Id.* at 6.  His medical records from one hospital indicate that he has been "known to [the] facility since 2010." *Id.*  Goldsmith has been prescribed a range of antipsychotic and antidepressant medications to manage his symptoms.

Dr. Kaufman found that if Goldsmith adheres to his medication regimen, his psychiatric conditions should not impair his competency.  Goldsmith did claim to experience certain visual hallucinations and delusions, which could theoretically bear on his competency, but Dr. Kaufman did not find these reported symptoms credible.  She administered two tests designed to detect malingering, both of which indicated that Goldsmith was likely feigning psychosis--or, at the very least, exaggerating his condition.  *See id.* at 8-9.  Thus, neither Goldsmith's schizophrenia nor his purported psychosis led Dr. Kaufman to doubt his competency.

Instead, what brought Dr. Kaufman to deem Goldsmith incompetent was his "mild intellectual disability." *Id.*

**4**

at 17.  Goldsmith has an "extremely low" IQ of 68 and the
academic ability of a second or third grader.  *Id.* at 10-
11 (capitalization altered).  Consistent with these
findings, he demonstrated exceptionally poor
intellectual functioning, with his verbal comprehension,
working memory, and processing speed all falling at or
below the second percentile.  *Id.* at 11.

Due to these cognitive deficits, Goldsmith could not
comprehend "the consequences of the proceedings against
him."  *Id.* at 16.  He demonstrated some understanding of
the legal system and could recite the charges against
him, but he could not accurately describe the trial
process.  Nor could he grasp "higher-order concepts that
require reasoning, such as the plea deal process."  *Id.*
"While he identified how he would like to proceed," Dr.
Kaufman explained, "he was unable to connect his desired
outcome with decisions he would need to make to meet that
outcome."  *Id.*

Unlike the psychiatric symptoms Goldsmith reported,

Dr. Kaufman could not identify any reliable evidence that he was feigning his cognitive deficits. His poor performance on the tests of his intellectual functioning was consistent with his documented intellectual disability. Dr. Kaufman concluded through tests designed to detect malingering and her own observations that Goldsmith put forth a good-faith effort on the tests of his cognitive abilities. *Id.* at 9.

In sum, Dr. Kaufman evaluated Goldsmith by way of interview, a mental status examination, and psychological testing. She concluded that "Goldsmith appears unable to assist his attorney not due to symptoms of psychosis but rather due to deficits in his intellectual functioning." *Id.* at 16. She recommended "psycho-educational services to restore him to competency," noting that "[m]any individuals with mild intellectual disability are able to attain competency." *Id.* at 17. During the August 30 hearing, Dr. Kaufman reiterated her conclusion that Goldsmith cannot currently assist in his

defense but can be restored to competency if given treatment.

Accordingly, based on the expert testimony and the evidence in the record, the court concludes by a preponderance of the evidence that Goldsmith is not competent to stand trial at this time. The court finds that he does not have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," nor does he presently have "a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402.

## B. Restoration Commitment

Once a defendant has been found incompetent to stand trial, the court must, pursuant to 18 U.S.C. § 4241(d)(1), order that the defendant be committed to the Attorney General for hospitalization at a Bureau of Prisons (BOP) facility until it can be determined whether a substantial probability exists that within the

foreseeable future the defendant will regain the capacity to be tried. *See United States v. Donofrio*, 896 F.2d 1301, 1302 (11th Cir. 1990). Section 4241(d)(1) limits the defendant's confinement to four months, and any additional period of confinement depends upon the court's finding there is a substantial probability "that within the additional time he will attain capacity to permit [further proceedings], 18 U.S.C. § 4241(d)(2)(A), or if he is found to create a substantial risk to himself and to others, pursuant to 18 U.S.C. § 4246." *Id.* at 1303.

Pursuant to § 4241(d)(1), the court will order that Goldsmith be committed to the custody of the Attorney General for a reasonable period of time, not to exceed four months, so that the BOP can determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the criminal proceedings against him to go forward.

The court will further order that, once a determination is made as to whether Goldsmith can be

8

restored and before the expiration of the four-month statutory period, BOP is to prepare and file a psychological report with this court. This report should summarize the course of Goldsmith's evaluation and treatment. It should also state BOP's findings, opinions, and conclusions regarding Goldsmith's attainment of competency to proceed in this case, including whether BOP believes that there is a substantial probability that Goldsmith will, in the foreseeable future, attain the capacity to permit the trial to proceed. Once the court receives this report, it will determine whether Goldsmith's commitment period needs to be extended pursuant to 18 U.S.C. § 4241(d)(2) for an additional reasonable period until his mental condition is so improved that trial may proceed.

***

Accordingly, it is ORDERED as follows:

(1) It is declared, pursuant to 18 U.S.C. § 4241(d), that defendant Roddrecius Lavelle Goldsmith is currently

9

mentally incompetent for further proceedings in this case--that is, he is currently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him and to assist in his defense.

(2) Pursuant to 18 U.S.C. § 4241(d)(1), defendant Goldsmith is committed to the custody of the Attorney General for such reasonable period of time, not to exceed four months from the date of his admission to the appropriate federal mental-health facility, as is necessary for the BOP to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed.

(3) No later than four months from the date of defendant Goldsmith's admission to the appropriate federal mental-health facility, the examiners designated to conduct or supervise his treatment shall file with

this court and counsel of record a written psychological report.   The report shall summarize the course of defendant Goldsmith's evaluation and treatment.   It shall also state BOP's findings, opinions, and conclusions regarding defendant Savage's attainment of competency to proceed in this case, including whether BOP believes that there is a substantial probability that defendant Goldsmith will, in the foreseeable future, attain the capacity to permit the trial to proceed.

(4) The United States Marshal for this district shall immediately coordinate with the Attorney General to organize defendant Goldsmith's removal to the custody of the warden of an appropriate BOP Institution as may be designated by the Attorney General.

DONE, this the 31st day of August, 2023.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

11